IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRELL HUNTER,<br><br>    Plaintiff,<br><br>    v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, et al.,<br><br>    Defendants. | Case No. 11-4911 JSC<br><br>**ORDER RE: DEFENDANTS' MOTIONS FOR PARTIAL SUMMARY JUDGMENT AND TO BIFURCATE (Dkt. Nos. 31, 50)** |

Now pending before the Court is Defendants' Motion for Partial Summary Judgment (Dkt. No. 31) and Defendants' Motion to Bifurcate *Monell* Claims (Dkt. No. 50). After carefully considering the pleadings and evidence submitted by the parties, and having had the benefit of oral argument on October 9, 2012, the Court GRANTS Defendants' motion for summary in part, DENIES it in part, and pursuant to Federal Rule of Civil Procedure 56(d) continues it in part. The Court also DENIES Defendants' motion to bifurcate without prejudice.

## BACKGROUND

On December 7, 2010, Plaintiff Darrell Hunter ("Hunter") was arrested at his mother's house by San Francisco Police Officers Davies and Gumpfer and taken to the San Francisco County Jail. (Dkt. No. 32-1, 89:21-90:1.) While seated in the triage area of the jail Plaintiff was

1  questioned by a nurse while these two officers and other Sheriff's deputies stood around him.
2  (Dkt. No. 32-1, 116:1-117:12.) Plaintiff "felt that [the nurse] was being rude in the way he was
3  asking questions" and asked the nurse "can you talk to me better than that." (Dkt. No. 32-1,
4  117:18-19; 119:6.) An altercation ensued wherein Plaintiff was punched in the head and fell to
5  the ground. (Dkt. No. 54-5,149:5-150:24). Once on the ground, Plaintiff was punched in the
6  head and handcuffed. (Dkt. No. 54-5, 150:12-18; 154:3-18.) Plaintiff recalls that the handcuffs
7  were yanked up and down and his face was shoved into the ground. (Dkt. No. 54-5, 155:14-
8  156:22.) Plaintiff was then taken to be photographed and ultimately a holding cell. (Dkt. No. 54-
9  6, 163:7-15; 182:15-17.) When he left the jail, Plaintiff went to California Pacific Hospital. (Dkt.
10 No. 54-5, 187:2-12.) He was found to have wrist sprains of the left and right wrists and a mild
11 concussion. (Dkt. No. 54-8, pp. 9-11.)

12 Immediately after the incident, Plaintiff filed a Citizen's Complaint alleging excessive
13 force with the San Francisco Sheriff's Department. (Dkt. No. 54-8, D000053.) Deputy Chew
14 conducted the initial investigation of Hunter's complaint, and on February 18, 2011, he
15 completed his administrative case review and concluded that the case should be "forward[ed]
16 to the Undersheriff for review and/or action as deemed appropriate by the Sheriff's
17 Department Administration." (Dkt. No.54-8, at D000042.) Defendants Burleson and Reymundo
18 were identified as subjects of this investigation. (*Id.*) On September 7, 2011, Plaintiff was sent a
19 letter stating that Undersheriff J. Dempsey had reviewed the case and concluded that the
20 allegations against the Sheriff's staff could not be sustained. (Dkt. No. 54-10.)

21 No charges were ever filed against Plaintiff for the charge for which he was arrested –
22 interfering with a process server.[1]

23 ## THE AMENDED COMPLAINT

24 Plaintiff's Amended Complaint names eleven defendants and alleges eleven causes of
25 action. The First Cause of Action, a section 1983 claim, alleges excessive force against all
26 defendants. In the second cause of action Plaintiff alleges a section 1983 claim for violation of

---

[1] The record does not include any evidentiary support for this fact, although both sides reference it in their briefs.

2

the Eighth Amendment for denial of medical care, again against all Defendants. His Seventh Cause of Action makes a nearly identical claim under state law, Cal. Gov't Code section 845.6.

Plaintiff makes a claim for assault and battery against all defendants in the Third Cause of Action and a claim against all defendants for intentional infliction of emotional distress in the Fourth Cause of Action. The Fifth and Sixth causes of action allege a violation of California's Bane Act, Cal. Civil Code section 52.1 and California's Unruh Civil Rights Act, Cal. Civil Code section 51.7, respectively, against all defendants. The Eighth Cause of Action alleges negligence against all defendants pursuant to Cal. Gov't Code section 844.6. Plaintiff also makes a section 1983 due process claim against defendants Burleson, Reymundo, Gonzales, Lu, James, Nuti, Roja, Davies and Gumpfer for each defendant's failure to intervene and protect plaintiff from injury at the hands of the deputies (Ninth Cause of Action). He makes a "neglect of duty" claim against the same defendants except for Davies and Gumpfer for their failure to document the use of force in an incident report (Tenth Cause of Action). Finally, in his Eleventh Cause of Action, Plaintiff alleges that the City, through the Undersheriff, former Sheriff, and supervisors Nuti and Roja, failed to properly train and supervise the officers who engaged in excessive force against Plaintiff.

Defendants move for summary judgment on most, but not all, of Plaintiff's claims. They do not move for judgment on the section 1983 excessive force claim and related state claims; however, they do move for judgment on the claims for *Monell* liability. They also move to bifurcate the *Monell* claims and stay all *Monell* discovery pending trial on the excessive force claims. Plaintiff opposes both motions.

## MOTION FOR PARTIAL SUMMARY JUDGMENT

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is "material" only if it could affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The question is "whether a jury

could reasonably find either that the [moving party] proved his case by the quality and quantity of evidence required by the governing law or that he did not." *Id.* "[A]ll justifiable inferences must be drawn in [the nonmovant's] favor." *See United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1542 (9th Cir. 1989) (en banc) (internal citations omitted).

The moving party bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the pleadings, depositions, interrogatory answers, admissions and affidavits, if any, that it contends demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party opposing the motion may not rest upon the mere allegations or denials of [that] party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *See* Fed. R. Civ. P. 56(e); *see also Anderson*, 477 U.S. at 250. The opposing party need not show the issue will be resolved conclusively in its favor, but rather, must submit sufficient evidence to create a material factual dispute, thereby requiring a jury or judge to resolve the parties' differing versions at trial. *See Anderson*, 477 U.S. at 248–49.

Special rules of construction apply to evaluating summary judgment motions: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n.*, 809 F.2d 626, 630 (9th Cir. 1987).

Federal Rule of Civil Procedure 56(d) (formerly 56(f)) allows a court to defer summary judgment "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). The nonmoving party must submit an affidavit explaining how the additional discovery is essential to defeating summary judgment to be entitled to a Rule 56(d) continuance. *California v. Campbell*, 138 F.3d 723, 779 (9th Cir. 1998). "Although Rule 56(f) facially gives judges the discretion to disallow discovery when the non-moving party cannot yet submit evidence supporting its opposition, the Supreme Court has restated the rule as requiring, rather than merely permitting, discovery where the non-moving party has not had the opportunity to discover information that is

4

essential to its opposition." *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 842, 846 (9th Cir. 2001) (internal quotation marks and citation omitted); *see also Burlington Northern Santa Fe R. Co. v. Assiniboine and Sioux Tribes of Fort Peck Reservation*, 323 F.3d 767, 773-74 (9th Cir. 2003) (citing *Wichita Falls Office Assoc. v. Banc One Corp.*, 978 F.2d 915, 919 n.4 (5th Cir. 1992) for the proposition that a Rule 56(d) continuance "should be granted almost as a matter of course unless the non-moving party has not diligently pursued discovery of the evidence").

A.  **Deliberate Indifference to Medical Needs**

Although a pretrial detainee's claim of excessive force is evaluated under the Fourth amendment, a pretrial detainee's claim of deliberate indifference to medical needs is evaluated under the Fourteenth Amendment. *Lolli v. County of Orange*, 351 F.3d 410, 418-19 (9th Cir. 2003). The test for deliberate indifference to medical need for pretrial detainees under the Fourteenth Amendment is the same as that for inmates under the Eighth Amendment. *Clothier v. County of Contra Costa*, 591 F.3d 1232, 1242 (9th Cir. 2010).

> First, the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Second, the plaintiff must show the defendant's response to the need was deliberately indifferent.

*Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal quotation marks and citation omitted). "The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment." *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc).

A plaintiff may satisfy the second prong by showing "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett*, 439 F.3d at 1096. Indifference "may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." A plaintiff need not show "his harm was substantial," *id.* at 1096; however, "an inadvertent failure to provide adequate medical care does not, by itself,

5

state a deliberate indifference claim for § 1983 purposes." *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (internal quotations and citations omitted).

Defendants move for summary judgment on the ground that the evidence is insufficient to support a finding that any defendant was deliberately indifferent to any physical or mental medical need of Plaintiff. The Court agrees.

It is undisputed that Plaintiff never asked for medical help and never complained about pain or injury; instead, after the altercation the officers placed him in a holding cell and he fell asleep. Plaintiff nonetheless argues that it should have been obvious to any reasonable officer that the unprovoked attack on Plaintiff alleged here would cause physical and emotional harm that would require immediate medical care. Plaintiff, however, does not cite any authority for this broad proposition. While perhaps in some circumstances an injury could be so obvious that a trier of fact could infer that the officers knew the plaintiff needed medical care and consciously chose not to do anything, there is no evidence in the record that would make such an inference permissible here. When Plaintiff visited the hospital the day following the altercation he was diagnosed with a concussion and wrist sprains. The record does not support a finding that either of these injuries would have been obvious to any of the Defendants such that they were deliberately indifferent in not obtaining medical help for Plaintiff while he was at the jail.   Perhaps in tacit acknowledgement of the insufficiency of his evidence, Plaintiff responds that he is in the process of obtaining Plaintiff's medical records and seeks further discovery in the form of an expert to review these records and opine on the physical and emotional harm caused to Plaintiff. This response does not satisfy Rule 56(d) as it does not explain why he was unable to present such facts in support of his opposition. *See* Fed. R. Civ. P. 56(d) (nonmovant must show
that, for specified reasons, it cannot present facts . . ."). Accordingly, Plaintiff's Rule 56(d) request to continue the summary judgment motion on the medical needs claims is denied. As Plaintiff has not submitted evidence sufficient to support a finding that any Defendant was deliberately indifferent to his medical needs, Defendants' motion for summary judgment on the second and seventh causes of action is GRANTED.

B.     Bane Act, Civil Code Section 52

The Bane Act, California Civil Code Section 52, provides a right to relief when someone "interferes by threats, intimidation, or coercion ... with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state." The elements of a claim for relief are: 1) an act of interference with a legal right by 2) intimidation, threats or coercion. *Haynes v. City and County of San Francisco*, No. 09-0174, 2010 WL 2991732, at *6 (N.D. Cal. Jul. 28, 2010); *Jones v. Kmart Corp.,* 949 P.2d 941, 944 (1998).

Courts within California were split on whether the intimidation, threats or coercion required by the Act must be separate from the alleged underlying constitutional violation. *See, e.g., Haynes*, 2010 WL 2991732, at *6 (discussing the varying approaches courts have taken to this issue); *compare Knapps v. City of Oakland*, 647 F.Supp.2d 1129, 1168 (N.D. Cal. 2009) (finding the elements of a section 52.1 excessive force claim identical to a section 1983 excessive force claim) *with Gant v. County of Los Angeles*, 765 F.Supp.2d 1238, 1252-53 (C.D. Cal. 2011) (holding that a wrongful arrest and detention, without more, could not constitute "force, intimidation, or coercion" for purposes of Section 52.1).

The California Court of Appeal, however, recently addressed this issue and held that "where coercion is inherent in the constitutional violation alleged . . . the statutory requirement of 'threats, intimidation, or coercion' is not met. The statute requires a showing of coercion independent from the coercion inherent in the wrongful detention itself." *Shoyoye v. County of Los Angeles*, 203 Cal.App.4th 947, 959 (2012). This Court is bound by *Shoyoye* "unless there is convincing evidence that the California Supreme Court would hold otherwise." *Carvalho v. Equifax Info. Services, LLC*, 629 F.3d 876, 889 (9th Cir. 2010); *see also Alvarez v. Chevron Corp.*, 656 F.3d 925, 932 n.7 (9th Cir. 2011) (holding that the federal court was bound by decision of the California Court of Appeal on issue of state law "because there is no California Supreme Court decision on point, and no indication that the California Supreme Court would disagree" with the Court of Appeal); *see also Archer v. City of Taft*, 2012 WL 3638064, at *10 (E.D. Cal. Aug. 22, 2012) (following *Shoyoye*).

7

Plaintiff responds that even under *Shoyoye* he has submitted evidence of threats, intimidation or coercion separate and independent from the excessive force itself based on his testimony that the officers taunted him during the encounter. Further, just before the deputies' use of force against Plaintiff, Deputy Burleson warned Plaintiff: "This is our house. You do exactly what we tell you to do." (Hunter Depo. Dkt. No. 54-5, 123:16-24, 127:4-7.)

Plaintiff does not explain how unspecified "taunting" during and just after the altercation somehow constitutes a threat or intimidation that interfered with one of Plaintiff's legal rights; therefore the evidence of "taunting" is insufficient to support a finding in favor of Plaintiff. The testimony regarding Deputy Burleson presents a closer question, but only as to Deputy Burleson. Depending on how the evidence comes in at trial, a reasonable jury might conclude that the Deputy's statement was a threat not to fight back, to allow the Deputies do whatever they want because the jail "is their house," and then they proceeded to violate Plaintiff's right to be free from excessive force. In other words, the threat interfered with Plaintiff's right to be free from excessive force because it amounted to a warning to simply accept whatever the Deputies did.

Defendants argue that Deputy Burleson's statement was not a threat, but merely a command to obey the rules of the jail, a command given when Plaintiff was not following directions. There is no evidence in the record, however, as to why Deputy Burleson made the statement (or even if he disputes it). While a jury could infer that the statement was not a threat, or that it did not interfere with Plaintiff's right to be free of excessive force, on the present bare record the Court cannot find that no jury could find for Plaintiff. Accordingly, Defendants' motion for summary judgment on the Bane Act claim is granted as to all Defendants except Deputy Burleson and the City and County on the basis of potential respondeat superior liability.

C.   <u>Unruh Act, Civil Code Section 51.7</u>

Under California Civil Code section 51.7 an individual has the "right to be free from violence, or intimidation by threat of violence" committed because – as relevant to this case – of the individual's race, color, ancestry, or national origin. *See* Cal. Civil Code §§ 51.7, 51(b).

1   Defendants move for summary judgment on this claim on the ground that Plaintiff has
2 not offered any evidence that the incident was based on his race; in fact, Plaintiff could not
3 recall anyone mentioning his race while at the jail. Plaintiff nonetheless argues that evidence of
4 racial animus can be proven circumstantially through evidence of prior incidents that indicate a
5 pattern of racial animus. Plaintiff contends that he therefore needs additional discovery in the
6 form of the personnel records to determine whether there is additional circumstantial evidence
7 in support of this claim.

8   As the personnel records which would include evidence of prior incidents, if any, were
9 not produced until after Plaintiff's opposition was due, the Court grants his request pursuant to
10 Rule 56(d) to continue the summary judgment motion on the Unruh claim. As discussed at oral
11 argument, Plaintiff is encouraged to voluntarily dismiss this claim if the further discovery does
12 not support it, and Plaintiff must offer sufficient evidence as to *each* defendant sued.

### D.  Claims Against Officers Davies and Gumpfer

Plaintiff alleges that the two San Francisco Police Officer defendants, Officer Davies and Officer Gumpfer, did not physically engage in excessive force against him; instead, Plaintiff contends they are liable because they stood by and did nothing. "While officers may be liable for willfully refusing to act in the face of ongoing assaults by fellow officers upon a custodial detainee, the bystanding officers' duty to protect arises only when the officers are aware of a specific risk of harm to the plaintiff and has time and opportunity to intervene." *Mathis v. Williams,* 1998 WL 101746, at *3 (N.D. Cal. Feb. 24, 1998) (citing *United States v. Reese*, 2 F.3d 870, 888–90 (9th Cir.1993); *Ting v. United States*, 927 F.2d 1504 (9th Cir. 1991)). As Plaintiff has not yet deposed these officers, the Court will continue the motion for summary judgment on this claim pursuant to Rule 56(d).

### E.  Neglect of Duty Claim

Plaintiff's Opposition contends that his neglect of duty claim is based on the same theory as the above claim regarding violation of due process rights by non-intervening participants. The Amended Complaint, however, alleges a "neglect of duty" based upon Defendants' failure to complete an incident report following the use of force. Plaintiff does not cite any law that

9

suggests a Plaintiff has a state law cause of action when officers fail to complete such a report. And to the extent Plaintiff is now claiming this cause of action is based on the same conduct as the previous claim, the lone case cited by Plaintiff, *Malley v. Briggs*, 475 U.S. 335, 346 n.9 (1986), does not support the proposition that a plaintiff may pursue a "neglect of duty claim" that is different from a due process claim for failing to intervene in fellow officers' use of excessive force. Accordingly, all Defendants are entitled to summary judgment on Plaintiff's Tenth Cause of Action for neglect of duty.

F. **Claims Against Supervisors**

Plaintiff also makes claims against two supervisors, Senior Deputy Nuti and Sergeant Roja, who were present at the incident but did not themselves use force against Plaintiff. A supervisor may be held liable under § 1983 "if he or she was personally involved in the constitutional deprivation or a sufficient causal connection exists between the supervisor's unlawful conduct and the constitutional violation." *Lolli v. County of Orange*, 351 F.3d 410, 418 (9th Cir. 2003) (internal quotation marks and citation omitted). In particular, a supervisor may be liable based on his "failure to bring his subordinates under control." *Id.*

The Court is uncertain whether these two deputies have moved for summary judgment on the excessive force claim against them (as opposed to the other claims addressed in this Order). To the extent they have, the Court continues the motion to allow Plaintiff to take further discovery. At the time of Plaintiff's opposition he had not yet taken their depositions. The delay in their depositions was reasonable given that Plaintiff did not want to take their depositions until he received their personnel files, material that was not produced until the end of September.

G. **Claims Against the City and County of San Francisco, Undersheriff Dempsey and former Sheriff Hennesey**

Plaintiff also makes claims against the City and County of San Francisco, as well as Undersheriff Jane Dempsey and former Sheriff Michael Hennesey. The Amended Complaint appears to allege that these defendants, or least the City and County, are liable under the federal causes of action based upon respondeat superior. The law is well-settled, however, that there is

no respondeat superior liability against municipalities under section 1983. *See Hansen v. Nieves*, No. 10-16941, 2012 WL 4136488, at *1 (9th Cir. Sept. 20, 2012). Summary judgment is granted to the extent Plaintiff seeks to hold any defendant liable on any federal claim on the basis of respondeat superior liability.

In *Monell v. Department of Social Services*, 436 U.S. 658, 690–91 (1978), the Supreme Court held that municipalities are "persons" subject to liability under § 1983 where "action pursuant to official municipal policy of some nature cause[s] a constitutional tort." Plaintiff makes *Monell* claims against the City and County in connection with his section 1983 claims for the excessive force and deliberate indifference to medical needs claims (the medical needs claim is no longer at issue). Under *Monell*, while a city may not be held vicariously liable for the unconstitutional acts of its employees on the basis of an employer-employee relationship with the tortfeasor, it may be held liable when a municipal policy causes an employee to violate another's constitutional right. *Monell,* 436 U.S. at 691–92.

Municipal liability under *Monell* may be established in any of three ways: (1) "the plaintiff may prove that a city employee committed the alleged constitutional violation pursuant to a formal governmental policy or a longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity;" (2) "the plaintiff may establish that the individual who committed the constitutional tort was an official with final policy-making authority and that the challenged action itself thus constituted an act of official governmental policy;" or (3) "the plaintiff may prove that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it." *Gillette v. Delmore*, 979 F.2d 1342, 1346–47 (9th Cir. 1992).

Plaintiff makes two alternative arguments in opposition to summary judgment on his *Monell* claims. First, he contends that the evidence in the record creates a dispute of fact as to whether an official with final policy-making authority ratified Defendants' use of excessive force. Second, and in the alternative, he moves pursuant to Rule 56(d) to continue the summary judgment motion to give him time to complete the discovery needed to support his claims.

1. Ratification

1    Plaintiff focuses on the Sheriff Department's internal affairs investigation as
2 demonstrating ratification of unconstitutional conduct. In particular, he contends the because
3 his civilian complaint was initially forwarded on for additional review, but then, nearly seven
4 months later, Plaintiff was sent a letter stating that that Undersheriff Dempsey had reviewed
5 the case and concluded that the allegations against the Sheriff's staff could not be sustained, a
6 reasonable trier of fact could find ratification sufficient to support *Monell* liability. (Dkt. No. 54-
7 10.) The Court disagrees that Plaintiff's showing is sufficient.
8    In *Larez v. City of Los Angeles*, 946 F.2d 630 (9th Cir. 1991), the Ninth Circuit
9 considered whether a jury verdict finding Los Angeles Police Department ("LAPD") Chief Daryl
10 Gates liable in his individual and official capacity for the constitutional violations of six of his
11 officers (and thus *Monell* liability for the City) was plain error. As here, plaintiffs filed a civilian
12 complaint following the incident of alleged excessive force. The complaint was investigated by
13 the Community Resources Against Street Hoodlums ("CRASH") division—the same division that
14 carried out the search of plaintiffs' home which gave rise to the underlying incident— rather
15 than Internal Affairs. *Id.* at 635. Chief Gates ultimately sent plaintiffs a letter informing them
16 that none of their complaints could be sustained. *Id.* Plaintiffs' expert, a former New York City
17 police officer and qualified expert regarding proper police procedures and policies, testified
18 that "the investigation contained a lot of holes and left questions unanswered that should have
19 been visible to any reasonable police administrator… and since both Internal Affairs and Gates
20 did not question it, but instead ratified it, the investigation procedure must be deemed to have
21 been carried out in accordance with official policy." *Id.* (internal quotations omitted). In
22 concluding that the procedure for investigating the complaint was improper, the expert relied
23 on the specifics of the investigation into plaintiffs' complaint (or lack of investigation) and a
24 two-year comparative study of citizen's complaints and departmental complaints against LAPD
25 officers conducted by the expert. *Id.* at 646-47. That study "which was unrebutted by
26 defendants" concluded that it was "almost impossible for a police officer to suffer discipline as a
27 result of a complaint lodged by a citizen," noting that it was as if "something has to be done on
28 film for the department to buy the citizen's story." *Id.* at 647 (internal quotations omitted).

In light of this evidence the Ninth Circuit held that "[t]he jury was entitled to conclude that this evidence supported the Larezes' theory that the LAPD's disciplinary and complaint processes, executed by policy or custom, contributed to the police excesses complained of because the procedures made clear to officers that, at least in the absence of independent, third-party witnesses, they could get away with anything." *Id.* The court thus upheld the jury's finding of liability for Gates in his individual and official capacity and liability on behalf of the City under *Monell*.[2]

Here, in contrast, there is no evidence as to the handling and disposition of other civilian complaints nor has Plaintiff offered any expert testimony regarding the processing of Plaintiff's complaint; indeed, there is very little evidence as to the processing of Plaintiff's complaint. To accept Plaintiff's theory would mean that a jury could find a *Monell* violation any time a complaint of excessive force is not sustained internally. *Larez* does not support that proposition.

Plaintiff's reliance on *McRorie v. Shimoda*, 795 F.2d 780 (9th Cir. 1986), is also unavailing. There, the Ninth Circuit reversed the district court's dismissal of a Section 1983 action brought by a pro se prisoner allegedly assaulted by a prison guard. The court found that the plaintiff had sufficiently pled claims against defendants in both their individual and official capacity because "[p]olicy or custom may be inferred if, after the shakedown, the prison officials took no steps to reprimand or discharge the guards, or if they otherwise failed to admit the guards' conduct was in error." *Id.* at 784. The question here, however, is not whether Plaintiff has stated a claim; it is whether he has submitted evidence sufficient to support a finding in his favor. He has not.

Accordingly, on the present record, there is insufficient evidence to support Plaintiff's claim for *Monell* liability.

### 2. Rule 56(d) Request

---

[2] Likewise, in *Henry v. County of Shasta*, 132 F.3d 512 (9th Cir. 1997), there was evidence of similar incidents which suggested that the officer's treatment of the plaintiff was not an isolated event, but instead inflicted in accordance with county policy. *Id.* at 519.

Plaintiff alleges that he needs further discovery to obtain "evidence of ratification, supervisory liability, a pattern and practice of uncorrected police misconduct, and a failure to train and supervise." (Dkt. No. 53, 19:17-20.) Plaintiff's discovery requests appear to be divisible into two categories: 1) discovery relating to the internal investigation into the incident at issue in this lawsuit, and 2) discovery relating to the individual officers involved and any prior issues they have had relating to excessive force.

Plaintiff contends that "actions taken (or lack thereof) in response to this videotaped incident by SFSD members supervising defendants Burleson and Reymundo clearly demonstrate indifference and ratification of these officers' unconstitutional conduct." (Dkt. No. 13:11-15.) Plaintiff contends that he needs to take the depositions of Undersheriff Dempsey, former Sheriff Michael Henessey, supervising officers Sergeant Roja and Senior Deputy Nuti to obtain further evidence in support of his *Monell* claim. Plaintiff also has outstanding written discovery seeking further information regarding the any internal affairs investigation into the incident as well as the personnel records of the individual named Defendants, at least at the time his opposition to the motion was due.

Defendants' objection to Plaintiff's Rule 56(d) request is two-fold. First, Defendants argue that Plaintiff has not demonstrated what this additional evidence would show and how it is essential to Plaintiff's claims. Second, Defendants object to any delay based on this discovery contending that Plaintiff has been dilatory in pursuing discovery and any deficiency in the evidence is of Plaintiff's making since Plaintiff pushed for an early trial, and thus, summary judgment schedule without having the necessary discovery.

The Court finds that pursuant to Rule 56(d) Plaintiff is entitled to obtain additional evidence to support his *Monell* claim. He seeks to complete the depositions of the defendants and fact witnesses and the opportunity to review documentary evidence of prior complaints of excessive force and their resolution. At the time his opposition to the motion was due he did not have either. While Plaintiff could have pushed to have taken the depositions earlier, it was reasonable to delay the depositions until he had received the documentary evidence from Defendants' personnel files, evidence he did not receive until the end of September.

14

1  Accordingly, the Court will allow Plaintiff to supplement his opposition to the motion for
2  summary judgment on the *Monell* claims, including the failure to train claim.

### MOTION TO BIFURCATE

4  Defendants request that Plaintiff's lawsuit be bifurcated pursuant to Federal Rule of Civil
5  Procedure 42(b) so that Plaintiff's *Monell* claims based on alleged unconstitutional training,
6  policies, customs, practices, and discipline (i.e., ratification) be tried, if at all, after adjudication
7  of his claims against the individually named defendants. Defendants also seek to stay any
8  *Monell* discovery until after adjudication of Plaintiff's individual claims. In other words,
9  assuming Plaintiff succeeds on his excessive force claim, Plaintiff seeks two trials with two
10 different juries.

11  Federal Rule of Civil Procedure 42(b) provides that "for convenience, to avoid prejudice,
12 or to expedite and economize" the court may bifurcate claims. The decision to bifurcate is
13 committed to the sound discretion of the trial court. *Hangarter v. Provident Life and Acc. Ins.
14 Co.*, 373 F.3d 998, 1021 (9th Cir. 2004). Where an overlap of factual issues exists between the
15 claims, courts are reluctant to bifurcate the proceedings. *McLaughlin v. State Farm Mut. Auto.
16 Ins. Co.*, 30 F.3d 861, 871 (7th Cir.1994); *see, e.g.*, *Green v. Baca*, 226 F.R.D. 624, 632-34 (C.D.
17 Cal. 2005) *order clarified*, 2005 WL 283361 (C.D. Cal. Jan. 31, 2005) (denying motion to
18 bifurcate). Courts generally consider three factors: 1) convenience, 2) prejudice to the parties,
19 and 3) judicial economy.

20  Defendants make two different arguments as to why bifurcation is appropriate. First,
21 they contend that the individual defendants will be prejudiced if other acts of excessive force by
22 others are admitted to prove Plaintiff's *Monell* claim. This argument, however, is premature.
23 The Court has not ruled that any other acts of excessive force are admissible; indeed, it has not
24 yet been presented with any evidence of other acts of excessive force. In *Stringer v. City of San
25 Pablo*, No. 07-03544, 2009 WL 5215396  (N.D. Cal. Dec. 28, 2009), in contrast, the trial court did
26 not grant the motion to bifurcate until the eve of trial, that is, after it had determined and seen
27 what evidence would be submitted. Moreover, the court phased rather than bifurcated trial; the
28 same jury was to decide three phases: liability, *Monell*, and damages. Here, in contrast,

1 Defendants ask this Court to, if necessary, have two different juries after two different trials
2 decide Plaintiff's claims arising from the same incident. As any prejudice to Defendants can be
3 addressed through phasing or instructions, such potential prejudice does not justify bifurcation
4 at this stage in the proceedings.

5 Defendants' second reason to seek bifurcation and stay *Monell* discovery is to avoid
6 delay of trial and the expenditure of unnecessary resources. Defendants appear particularly
7 concerned regarding the burden and cost of the *Monell* discovery sought by Plaintiff. However,
8 as the Court stated at the hearing, these concerns can be addressed by limiting the scope of the
9 discovery sought. The burden of any discovery sought must be weighed under the
10 proportionality analysis set forth in Federal Rule of Civil Procedure 26.

11 Accordingly, Defendants' motion for bifurcation is DENIED without prejudice.

## CASE SCHEDULE

13 As discussed at oral argument on October 9, 2012, Plaintiff shall provide Defendants
14 with a letter on or before October 12, 2012 which identifies every outstanding discovery
15 dispute on which Plaintiff seeks to meet and confer and identifies with specificity the evidence
16 sought. As fact discovery has closed, any dispute not identified shall be waived. The parties shall
17 then meet and confer in person on October 22, 2012. If any dispute remains following this in
18 person meet and confer the parties shall submit a joint discovery letter in accordance with this
19 Court's Civil Standing Order on or before November 2, 2012. The Court will hear oral argument
20 on November 6, 2012 at 8:30 a.m.

21 During the October 22 in person meet and confer the parties shall also discuss case
22 deadlines, including expert disclosures. If there is any dispute regarding the case schedule
23 following the meet and confer, and a party wishes to change any of the case deadlines, such
24 dispute shall be included in the Joint Letter to be submitted to the Court on or before November
25 2, 2012. The eight-page limit for the letter is waived.

26 Finally, on or before Monday, October 15, 2012, Plaintiff shall identify for Defendants in
27 writing the scope of the questions he seeks to ask at their depositions regarding prior
28 complaints of excessive force. To the extent the parties dispute the permissible scope of

16

1  deposition questioning, they shall submit a Joint Letter Brief, in accordance with the Court's
2  Civil Standing Order, on or before October 19, 2012.

### CONCLUSION

For the reasons explained above, Defendants' motion for partial summary judgment is granted in part, denied in part, and deferred in part as follows:

1. Defendants' motion for summary judgment on Plaintiff's claims for deliberate indifference to medical needs (Second and Seventh Causes of Action) is GRANTED as to all Defendants;

2. Defendants' motion for summary judgment on Plaintiff's neglect of duty claim (Tenth Cause of Action)[3] is GRANTED as to all Defendants;

3. Defendants' motion for summary judgment on Plaintiff's Bane Act claim (Fifth Cause of Action) is GRANTED as to all Defendants except for Deputy Burleson and the City and County.

4. Defendants' motion for summary judgment on Plaintiff's theory of respondeat superior liability on any federal claims is GRANTED;

5. Defendants' motion for summary judgment on all *Monell* claims (including the failure to train (Eleventh Cause of Action)), the Unruh claim (Fifth Cause of Action), and the due process claim (Ninth Cause of Action) is CONTINUED pursuant to Federal Rule of Civil Procedure 56(d) to permit Plaintiff to complete relevant discovery. If the parties cannot agree on a deadline for submission of Plaintiff's supplemental opposition and Defendants' supplemental reply, the Court will address the deadline at the November 6 hearing.

Defendants' motion to bifurcate is DENIED without prejudice.

This Order disposes of Docket No. 50.

**IT IS SO ORDERED.**

---

[3] The Amended Complaint erroneously identifies this cause of action as the "Ninth Cause of Action," but it is in fact the Tenth Cause of Action.

Dated:  October 10, 2012

_____
JACQUELINE SCOTT CORLEY
UNITED STATES MAGISTRATE JUDGE