1
2
3
4
5
6                    IN THE UNITED STATES DISTRICT COURT
7                  FOR THE NORTHERN DISTRICT OF CALIFORNIA
8
9   DARRELL HUNTER,                          Case No. 11-4911 JSC
10              Plaintiff,                    **FINAL PRETRIAL ORDER**
11       v.
                                             **REDACTED**
12  CITY AND COUNTY OF SAN
13  FRANCISCO, et al.,
14
              Defendants.
15
16
17       The Court held a pretrial conference on July 11, 2013 and ruled as is set forth below.
                          **DEFENDANTS' MOTION TO BIFURCATE**
18       The Court previously denied Defendants' motion to bifurcate (Dkt. No. 50) without
19  prejudice, concluding that Defendants' arguments were premature and any prejudice to
20  Defendants could be alleviated through phasing the trial.  Defendants renewed their motion to
21  bifurcate following the Court's denial of their motion for summary judgment on Plaintiff's
22  *Monell* claim.  (Dkt. Nos. 127 & 134.)
23       Federal Rule of Civil Procedure 42(b) provides that "for convenience, to avoid
24  prejudice, or to expedite and economize" the court may bifurcate claims. The decision to
25  bifurcate is committed to the sound discretion of the trial court.  *Hangarter v. Provident Life*
26  *and Acc. Ins. Co*., 373 F.3d 998, 1021 (9th Cir. 2004). Where an overlap of factual issues
27  exists between the claims, courts are reluctant to bifurcate the proceedings. *McLaughlin v.*
28  *State Farm Mut. Auto. Ins. Co.*, 30 F.3d 861, 871 (7th Cir.1994); *see, e.g., Green v. Baca*, 226

United States District Court
Northern District of California

F.R.D. 624, 632-34 (C.D. Cal. 2005) order clarified, 2005 WL 283361 (C.D. Cal. Jan. 31, 2005) (denying motion to bifurcate). Courts generally consider three factors: 1) convenience, 2) prejudice to the parties, and 3) judicial economy.

Defendants argue that bifurcation is appropriate under each of these grounds. In particular, Defendants contend that evidence of the Internal Affairs ("IA") investigation which followed the incident, evidence of other excessive force complaints, and evidence of policies and procedures is irrelevant to the question of whether Defendants used excessive force during the incident in question, and moreover, this evidence could significantly prejudice Defendants. Plaintiff objects to bifurcation as failing to serve the interests of judicial economy and as prejudicial to Plaintiff's ability to present the totality of the facts and circumstances regarding Plaintiff's claims to the jury in a uniform fashion.

The Court has carefully weighed the parties' arguments and concludes that phasing of the liability portion of the trial and Plaintiff's *Monell* and damages claims would promote the interests of judicial economy and minimize any potential prejudice to the parties. The first phase of the trial shall only address Plaintiff's excessive force allegation against the six Individual Defendants as a finding of excessive force is a predicate to any *Monell* claims. If the jury concludes that one or more of the Individual Defendants are liable, then the trial will proceed to the second phase which will include the *Monell* claims and all damages claims.

The prejudicial effect of evidence regarding the IA investigation or other excessive force complaints outweighs any probative value this evidence might have during the Phase One proceedings. *See* Defendants' Motion in Limine No. 1, Dkt. No. 132, *infra*. Similarly, by phasing the damages evidence from the liability evidence, the Court is able to mitigate any prejudice which would result from introduction of evidence regarding Plaintiff's criminal history, drug use, or mental health during Phase One. *See* Plaintiff's Motion in Limine No. 1, Dkt. No. 145, *infra*. The prejudicial effect of this evidence outweighs its probative value with respect to the question of liability; accordingly, this evidence may only be presented in Phase Two.

Phase One shall only address the issue of whether any of the Individual Defendants violated Plaintiff's Fourth Amendment rights pursuant to 42 U.S.C. § 1983 by using unreasonable and excessive force.  Defendants have stipulated that if the jury finds that any of the Defendants did so, then liability on the state common law claims follows.

MOTIONS IN LIMINE

**A.  Defendants' Motions in Limine**

    **1.  Defendants' Motion in Limine No. 1 (Dkt. No. 132)**

Defendants' first motion in limine seeks to exclude the following categories of evidence relating to incidents involving the individual Defendants or excessive force incidents within the San Francisco Sheriff's office generally:

1) Evidence of other complaints, claims or lawsuits related to the individual Defendants, or other incidents reported in the press or discovered by Plaintiff through other means;
2) Evidence from the individual Defendants' personnel files unrelated to this incident, including disciplinary or training materials;
3) Evidence of or argument concerning other instances of law enforcement misconduct, such as the Rodney King or Oscar Grant cases;
4) Evidence regarding other excessive force cases disclosed as part of the *Monell* discovery in this case; and
5) Evidence from the Internal Affairs investigation of the incident for purposes of the individual liability phase of the trial.

With respect to Categories 1-2 and 4, Plaintiff stated at the Pretrial Conference that for purposes of Phase One the evidence he seeks to admit involves the IA investigations of excessive force complaints filed against certain Individual Defendants that are attached to the Declaration of Joseph Elford (Dkt. No. 150).  These include:

- **Exhibit 8** – an IA report regarding an excessive force complaint against multiple officers arising from an incident on June 27, 2006. Defendant ██████ is one of the deputies involved; however, he is not alleged to have struck the alleged victim. Instead, he was present at the time one or more deputies struck the alleged victim. IA closed the case concluding there was no basis for further action.

- **Exhibit 9** – contains documents regarding an incident that occurred on October 7, 2006 wherein Defendant ██████ was arrested for assault following an altercation

3

that occurred in Vacaville.  The incident did not occur while ███████ was on duty.  The outcome is unclear from the documents provided.

- **Exhibit 10** –an IA report regarding an excessive force complaint against Individual Defendant ███████ regarding an incident that occurred on April 21, 2007. ███████ was one of several deputies who responded to assist a fellow deputy who was being assaulted by the alleged victim during the course of a strip search during booking.  There is no specific allegation that ███████ engaged in a physical assault within the IA report summary, although the claim form the victim completed names ███████ as one of the deputies who beat him and injured his head and face. IA closed the case concluding there was no basis for further action.

- **Exhibit 11** – an IA report of a complaint of excessive force against Defendant ███████ regarding an incident which occurred on February 15, 2009.  Inmate ███████ alleged that ███████ assaulted him when ███ came to ███'s cell to transport him to medical.  ███████ alleged that ███████ slammed his head into a window in the cell, performed a leg sweep knocking ███████ down, and then opened the cell door striking ███ in the head with the door.  ███████ reported that ███ was verbally abusive to him and physically threatening.  He denied using force against ███ and said that he made the decision to transport ███ to a safety cell when, after he had secured ███ in his cell, ███ continued to yell at him, hit the cell door, and exposed his penis to ███████ through the window of his cell.  No other deputies saw the entire incident and interviews of other deputies and inmates varied as to whether ███ was verbally abusive (most agreed he was), but not all agreed that ███ should have been put in a safety cell or that he appeared dangerous.  ███████ was issued a formal notice of investigation for using excessive force to restrain and place ███ back in his cell and for moving him to a safety cell.  The complaint was initially forwarded to Undersheriff Dempsey for review, but she did not sustain the charges.   The incident occurred within two years of the incident with Plaintiff.  ███, like Plaintiff, is African American.

- **Exhibit 12** – a video from the IA investigation of ███████ regarding the ███████ complaint.

- **Exhibit 13** – an IA report of a complaint of excessive force against Defendant ███████ and other deputies regarding an incident which occurred on April 19, 2009.  Inmate ███████ alleged that when ███████ returned him to his cell after being allowed out for "walk time" ███████ and another deputy attacked ███ from behind and punched and kicked him several times.  Prior to being returned to his cell ███ had complained about the early walk time and asked for a grievance form.  ███████ reported that ███ took a combative stance upon being returned to his cell and had to be taken down to be handcuffed.  The complaint was initially forwarded to

United States District Court
Northern District of California

Undersheriff Dempsey for review, but the charges were ultimately not sustained.  This incident also took place within two years of the incident with Plaintiff.

In the Ninth Circuit, "'other act' evidence is admissible under Rule 404(b) if the following test is satisfied: (1) there must be sufficient proof for the jury to find that the defendant committed the other act; (2) the other act must not be too remote in time; (3) the other act must be introduced to prove a material issue in the case; and (4) the other act must, in some cases, be similar to the offense charged." *Duran v. City of Maywood*, 221 F.3d 1127, 1132-33 (9th Cir. 2000).  Even if all these conditions are satisfied, the evidence may still be excluded under Rule 403 as more prejudicial than probative.

Of the "prior incidents of excessive force" evidence that Plaintiff seeks to admit, the only evidence that might be admissible consistent with Rule 404(b) are the two complaints against Defendant ███████.[1]  However, neither complaint was sustained, and thus, neither can satisfy the first factor without having a trial within a trial on whether the inmates' allegations of excessive force are true.[2]  *Id.* at 1133 (concluding that it was not error for the district court to exclude evidence that the officer had been involved in another shooting three days after the incident because it would require a "full-blown trial within this trial" and "the marginal value of the evidence [was] substantially outweighed by the danger of ... confusion of the issues, or misleading the jury, or by consideration of undue delay, [and] waste of time") (internal quotations omitted).

Plaintiff does not respond to Defendants' 404(b) objection other than to state that the evidence is admissible to "demonstrate motive, intent and opportunity (if not a propensity for

---

[1] Plaintiff argued at length during the Pretrial Conference that Defendant ███████, the subject of the excessive force complaint in Exhibit 10, testified in his deposition that he accidently touched Plaintiff in the back of the head during the underlying incident.  Plaintiff thus contends the similarity of the incident described in Exhibit 10 and the underlying incident warrants admission of this evidence.  However, Plaintiff has not provided a copy of Defendant ███████'s deposition, and thus, the Court lacks adequate information to rule on the issue, although the Court notes that one prior excessive force complaint three years prior does not appear particularly probative.

[2] Here, IA forwarded two of the excessive force complaints made by Plaintiff against the Individual Defendants to the Undersheriff for review.  Neither was for Defendant ███████.

5

United States District Court
Northern District of California

1    violence)" citing to out-of-circuit authority.  (Dkt. No. 132, 12:5-7.)  In particular, Plaintiff

2    relies on the Seventh Circuit's decision in *Wilson v. City of Chicago*, 6 F.3d 1233, 1238 (7th

3    Cir. 1993), which concluded that the district court erred in excluding the testimony of two

4    witnesses who would have testified regarding prior incidents of excessive force by the

5    defendant officers because the evidence was admissible under Rule 404(b) to show "intent,

6    opportunity, preparation, and plan" and for impeachment.  *Wilson,* however, involved the

7    plaintiff's allegation that he was tortured, including by use of electroshock, to coerce a

8    confession to murdering a police officer.  The defendant denied he had ever used

9    electroshock.  The Seventh Circuit held it was erroneous to exclude evidence that nine days

10   before the confession the defendant had used electroshock.  It was also error to exclude

11   evidence that the defendant had similarly beaten another suspect who was also detained for

12   murder of a police officer.  The evidence was admissible to show "intent, opportunity,

13   preparation, and plan." *Id.* at 1237.  Plaintiff makes no effort here, however, to show how the

14   prior complaints against Deputy ███ are similarly relevant.

15          Plaintiff's reliance on *Kopf v. Skyrm*, 993 F.2d 374 (4th Cir. 1993), an excessive force

16   case in which some of the allegations of excessive force related to an officer failing to restrain

17   his police dog, is likewise unavailing.  The Fourth Circuit found that the district court erred in

18   excluding evidence of the defendant officer's prior statements regarding his police dog and a

19   prior incident wherein a police dog had been killed because such evidence would have shown

20   "intent and lack of mistake." *Id.* at 381 (characterizing Rule 404(b) "as an inclusionary rule,

21   which permits the introduction of all relevant acts except those that prove only character")

22   (internal quotations and citations omitted).  Again, here, Plaintiff has failed to show how the

23   evidence of the prior complaints against ███ is relevant to anything other than to

24   improperly show propensity.  Just saying the evidence is admissible to show lack of mistake

25   or accident does not make it so.

26          Moreover, both *Wilson* and *Kopf* predate the Ninth Circuit's decision in *Duran* and

27   Plaintiff has offered no authority for the proposition that this Court can ignore *Duran's* four-

28

6

step test for admitting other act evidence.[3]  *See, e.g.*, *Washburn v. Fagan*, 331 F. App'x 490, 493 (9th Cir. 2009) (describing *Duran* as setting forth the appropriate test for the admissibility of "other acts" under Rule 404(b)); *Gorman v. City of San Diego*, No. 08-CV-2345, 2012 WL 1835689, at *8 (S.D. Cal. May 21, 2012), appeal dismissed (Jan. 30, 2013) (excluding evidence of an incident that occurred eight years prior involving the same officer under *Duran* because of the "great danger that the testimony would be unfairly prejudicial to the Defendants and would cause jury confusion because admission of the testimony would lead to a trial within a trial"); *J.W. v. City of Oxnard*, No. 07-06191, 2008 WL 4810298, at *8 (C.D. Cal. Oct. 27, 2008) (following *Duran*); *Rivera v. Stover*, No. 07-109, 2010 WL 3835543, at *1 (D. Ariz. Feb. 23, 2010) amended, No. 07-109, 2010 WL 3835544 (D. Ariz. Mar. 5, 2010) (following *Duran*).

In sum, Plaintiff has failed to make any showing as to how the prior excessive force complaints against Deputy ████ are relevant to show anything other than propensity to use excessive force.  Moreover, to the extent there is some minimal probative value, on the record currently before the Court, the Court finds that the danger of prejudice to all Defendants outweighs any probative value and thus the complaints are inadmissible under Rule 403. Accordingly, Defendants' motion to exclude category 1-2 and 4 evidence from Phase One is **GRANTED**.  As with all rulings herein, this ruling is subject to revision depending on how the evidence is presented at trial.

---

[3] Plaintiff also relies on a Southern District of Georgia case that post-dates *Duran*.  *See Hooks v. Langston*, No. 05-CV-065, 2007 WL 1831800 (S.D. Ga. June 25, 2007).  The court in *Langston* ruled in limine that "that prior, similar beatings by [the defendant] can be admitted to show [defendant's] intent to harm [plaintiff] when he handcuffed him … under the intent exception to the general rule against character evidence."  *Id*. at *5 (internal quotations and citation omitted).  In *Langston*, the defendant was not arguing that the force used was reasonable under the circumstances, but rather, that he did not use any force at all.  Finally, Plaintiff's reliance on the Second Circuit's decision in *Hynes v. Coughlin*, 79 F.3d 285, 292 (2d Cir. 1996), is misplaced as there the court there actually held that the district court erred in admitting the plaintiff's disciplinary file under Rule 404(b).

United States District Court
Northern District of California

1    As for Category 3, Plaintiff does not intend to introduce evidence regarding Rodney

2  King or Oscar Grant.  Finally, the parties agree that for purposes of Phase One, Category 5

3  evidence is only admissible as impeachment if the witness's testimony contradicts statements

4  made during the Internal Affairs investigation.  The parties shall meet and confer in advance

5  regarding how they shall refer to the prior statement under these circumstances.

6    **2.  Defendants' Motion in Limine No. 2 (Dkt. No. 133)**

7    Defendants' second motion in limine seeks to exclude evidence regarding the San

8  Francisco Sheriff's Departments' Use of Force policy.  Defendants' objections to this

9  evidence are overruled as they go to the weight that should be given to the evidence rather

10 than its admissibility.  Further, the Court finds that any unfair prejudice from admission of the

11 evidence is outweighed by its probative value.  The motion is **DENIED**.

12   **B.  Plaintiff's Motions in Limine**

13   **1.  Plaintiff's Motion in Limine No. 1 (Dkt. No. 145)**

14   Plaintiff's first motion in limine seeks to exclude evidence of any of Plaintiff's criminal

15 convictions.  This motion is **GRANTED** as to evidence of Plaintiff's prior criminal

16 convictions for purposes of Phase One.  Defendants also seek to introduce evidence of

17 Plaintiff's prior interactions with law enforcement to show bias.  In particular, Defendants

18 contend that Plaintiff makes claims of excessive force after every police encounter and that

19 such evidence goes to his bias or motive in bringing this lawsuit.  The Court agrees that

20 evidence of the police misconduct complaints is probative; however, there is no need to offer

21 evidence of the details of Plaintiff's encounters with the police that led to the complaints.

22 Such details are more unfairly prejudicial than probative.  Plaintiff may offer competent,

23 admissible evidence that the complaints of misconduct were somehow sustained or found

24 true, but if he does so, Defendants will be allowed to offer evidence that complaints were not

25 sustained.  Accordingly, evidence of Plaintiff's complaints of police misconduct is admissible

26 for the limited purpose of showing bias or motive, but evidence regarding any related

27 criminal convictions or charges is excluded; that is, either side may introduce evidence that

28 following a particular encounter with law enforcement, Plaintiff alleged police misconduct,

8

1   but evidence regarding the reason for the police contact, i.e., any associated criminal

2   convictions or charges is excluded from Phase One.

3   **2. Plaintiff's Motion in Limine No. 2 (Dkt. No. 146)**

4   Plaintiff's second motion in limine seeks to exclude allegations of uncharged conduct.

5   At the Pretrial Conference, Plaintiff clarified that he seeks to exclude evidence of two

6   particular incidents: 1) Plaintiff's termination from his employment at Recology, and 2) the

7   Restraining Order for Marcus Garvey Apartments. This evidence is only relevant to the issue

8   of damages and is therefore excluded from Phase One, but is admissible in Phase Two.

9   Defendants may also introduce evidence that Plaintiff filed a Charge of Discrimination with

10  the Equal Employment Opportunity Commission. All this evidence is relevant to his claim for

11  $1 million in emotional distress damages. Plaintiff's motion is thus **GRANTED** as to the

12  Phase One proceedings.

13  **3. Plaintiff's Motion in Limine No. 3 (Dkt. No. 147)**

14  Plaintiff's third motion in limine seeks to exclude evidence of Plaintiff's prior drug use.

15  The motion is **GRANTED IN PART**. Any evidence of drug use is excluded from Phase One

16  pursuant to Rule 403. With respect to the damages phase, evidence of Plaintiff's 1994 drug

17  use is excluded: the passage of time undermines any probative value this evidence might have

18  and it is highly prejudicial. However, both parties seek to admit evidence of reports that were

19  prepared in connection with Plaintiff's involuntary commitments pursuant to California

20  Welfare and Institutions Code Section 5150; to the extent that these reports discuss Plaintiff's

21  drug use, both sides agree that they are admissible. Again, this evidence is limited to the

22  Phase Two proceedings.

23  **4. Plaintiff's Motion in Limine No. 4 (Dkt. No. 148)**

24  Plaintiff's fourth motion in limine seeks to exclude new evidence regarding the video

25  technology at the San Francisco County Jail. Defendants contend that the motion is moot

26  because Plaintiff has withdrawn his video expert and Defendants have stipulated to admission

27  of Plaintiff's "enhanced" video. Plaintiff contends that the motion is not moot because he

28  intends to present evidence of the presence of a smudge of the video footage and the lack of

1  maintenance of the video surveillance equipment and he seeks to preclude Defendants from

2  rebutting this evidence.  Defendants have stated that they do not intend to offer any testimony

3  as to the maintenance of the video surveillance equipment.  Accordingly, the motion is

4  **DENIED AS MOOT**.

5      **5.   Plaintiff's Motion in Limine No. 5 (Dkt. No. 149)**

6      Plaintiff's fifth motion in limine seeks to preclude Defendants' experts from testifying

7  regarding ultimate issues.  Plaintiff's motion is **GRANTED:** neither party's experts may

8  testify regarding ultimate issues solely within the jury's purview such as what the video

9  shows or whether the force used was in fact reasonable.

**TRIAL WITNESSES**

10

11     The parties will submit revised witness lists for the Phase One portion of the trial by

12  July 26, 2013.

13     Plaintiff's witness Eric Younger will not be allowed to testify in Phase One unless

14  Plaintiff makes an offer of proof as to his testimony.

15     Defendants' witness Patrick Griffin's testimony shall be limited to encounters he had

16  with Plaintiff in the day or two following the December 7, 2010 incident.

17     Witnesses are excluded from the courtroom during trial.  The parties shall meet and

18  confer regarding whether any of Plaintiff's Phase Two witnesses shall be permitted to sit in

19  during the Phase One portion of the trial.  If the parties are unable to resolve the matter, they

20  may submit a joint letter brief by July 29, 2013.

**EXHIBITS**

21

22     The parties will submit revised exhibit lists for the Phase One portion of the trial by

23  July 26, 2013.  Plaintiff is advised that the exhibit binders he provided to the Court are

24  missing several exhibits and there are inconsistencies between the original set of exhibits and

25  the chambers copy as set forth below:

26     **Original Exhibit Binder:**  Exhibits 6-15, 40, 49, 50, 51, 53-57, 59, 65, and 72 are

27  empty.  Exhibits 23, 24, 30, 31, and 47 are one-page documents which state "intentionally left

28  blank" rather than the exhibits described on the Exhibit List.  Exhibits 36, 39, 42, and 49 are

10

1   one-page documents that state "digital evidence to be produced" rather than the exhibits

2   described on the Exhibit List.

3       **Chambers Exhibit Binder**: Exhibits 6-15, 40, 49, 50, 52-55, 57, 65, 69 and 72 are

4   empty.  Exhibits 23, 24, 30, 31, and 47 are one-page documents which state "intentionally left

5   blank" rather than the exhibits described on the Exhibit List.  Exhibits 36, 39, 42, and 43 are

6   one-page documents which state "digital evidence to be produced" rather than the exhibits

7   described on the Exhibit List.

8       Plaintiff shall correct these deficiencies by July 29, 2013.

9                                    **MISCELLANEOUS MATTERS**

10      The parties were ordered to meet and confer regarding whether the fact that Plaintiff

11  was never charged with the offense for which he was arrested on December 7, 2010 is

12  admissible.  Plaintiff has submitted a letter brief suggesting that parties were unable to resolve

13  the matter among themselves.  Defendants may file a response by July 29, 2013.

14      The parties shall meet and confer regarding a Joint Statement of the Case to be read to

15  the jury.  The parties shall file the agreed upon language with the Court by July 26, 2013.

16      Plaintiff's Administrative Motion to File Under Seal (Dkt. No. 154) certain exhibits

17  submitted with his motions in limine is **GRANTED in part** and **DENIED in part** as follows.

18  The motion is DENIED as to any request to seal information regarding Plaintiff's

19  psychological evaluation, including Exhibit 3, as Plaintiff's request for special damages based

20  on severe emotional distress and his request for $285,000 in future medical expenses related

21  to his psychological issues puts his mental health directly as issue.  The request is GRANTED

22  as to evidence regarding allegations of excessive force in cases other than this one: Exhibits

23  7-11, 13 & 14 and the names of complainants and officers listed in paragraphs 4-9 and 12-14

24  of the Supplemental Declaration of Joseph D. Elford re: Motions in Limine containing

25  evidence shall be filed under seal.

26                                         **CONCLUSION**

27      Jury trial will commence on August 5, 2013 at 8:30 a.m. in Courtroom D on the 15th

28  Floor.  The jury panel will be brought in around 9:00 a.m. at which point the Court will voir

United States District Court
Northern District of California

dire the jury.  Each party shall have 30 minutes to voir dire the jury when the Court is done.
Each party may exercise three peremptory challenges, and the Court will empanel a jury of
eight, with no alternates.  Monday through Wednesday, the Court will recess at 3:00 p.m.,
give or take 30 minutes, with a break around 10:00 a.m. and a 45 minute lunch break around
noon.  On Thursday, August 8, 2013, the Court will recess at 1:00 p.m.   The Court expects
the jury to begin deliberations on Phase One by Friday, August 9, 2013.

This Order disposes of Docket Nos. 127, 128, 129, 132, 133, 134, 145, 146, 147, 148,
149, and 154.


**IT IS SO ORDERED.**


Dated: July 23, 2013

_____
JACQUELINE SCOTT CORLEY
UNITED STATES MAGISTRATE JUDGE

United States District Court
Northern District of California