IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRELL HUNTER,<br><br>          Plaintiff,<br><br>     v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, et al.,<br><br>          Defendants. | Case No. 11-cv-4911 JSC<br><br>**ORDER RE: PLAINTIFF'S MOTION FOR REVIEW OF CLERK'S TAXATION OF COSTS (Dkt. No. 219)** |

Now pending before the Court is Plaintiff's Motion for Review of the Clerk's Taxation of Costs (Dkt. No. 219).[1]  Having considered the parties' submissions, and having had the benefit of oral argument on October 31, 2013, the Court GRANTS Plaintiff's motion and declines to award costs in this action.

**BACKGROUND**

Plaintiff filed this suit alleging violation of his civil rights under state and federal law following an incident that occurred while he was in the custody of the San Francisco Sherriff's Department on December 7, 2010.  At the time of the incident, Plaintiff was seated in the intake area of the San Francisco County Jail being interviewed by a nurse.  Several

---

[1] Plaintiff also filed the identical document as "Objections to Bill of Costs" at Docket No. 218.

1  deputies began to gather around Plaintiff, and one of them, Defendant Deputy Burleson, made
2  physical contact with Plaintiff's upper body subsequent to which Plaintiff fell or was placed
3  on the floor and handcuffed.  Plaintiff alleged that Burleson struck him in the head and
4  several of the other deputies used excessive force during the incident.  The incident was
5  captured on videotape, although it was not documented as a use of force incident. Plaintiff
6  filed a Citizen's Complaint alleging excessive force with the San Francisco Sheriff's
7  Department which was forwarded to Defendant Undersheriff Dempsey for review as to two
8  of the deputy Defendants (including Burleson).  Thereafter, the Assistant Legal Counsel for
9  the Office of the Sheriff issued Defendant Burleson a Notice of Intent to Impose Suspension
10  for up to Five (5) Days Without Pay finding that he had used excessive force.  A month later,
11  Defendant Burleson had a Skelly hearing before Defendant Hennessey, the Sheriff at that
12  time, who declined to impose any discipline.
13       The case proceeded to trial on Plaintiff's claims of excessive force against the
14  individual Sheriff's deputies involved in the incident, Plaintiff's Bane Act claim (violation of
15  California Civil Code Section 52.1) as to Deputy Burleson and the City and County of San
16  Francisco, Plaintiff's claim for supervisory liability against Senior Deputy Nuti, and
17  Plaintiff's *Monell* excessive force claim.  The Court phased the individual liability portion of
18  the trial from the damages and *Monell* claims.  After a week-long trial, the individual liability
19  issue was submitted to the jury who returned a verdict in favor of Defendants, thus ending the
20  trial prior to presentation of Plaintiff's *Monell* and damages claims.
21       Following the jury's verdict, the Clerk granted Defendants' request for costs and taxed
22  costs in the amount of $14,635.81.

**LEGAL STANDARD**

24       Under Federal Rule of Civil Procedure 54(d), the prevailing party in a lawsuit may
25  recover its costs "unless the court otherwise directs."  Rule 54(d) "creates a presumption in
26  favor of awarding costs to a prevailing party, but vests in the district court discretion to refuse
27  to award costs." *Association of Mexican-American Educators v. State of California*, 231 F.3d
28  572, 592 (9th Cir. 2000) (en banc).  The presumption in favor of costs is not rigid. *Fishgold*

*v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275, 284 (1946). "In order to overcome the presumption, a losing party must show that to award costs to the prevailing party would be unjust." *Ayala v. Pac. Mar. Ass'n*, No. 08-0119, 2011 WL 6217298, at *1 (N.D. Cal. Dec. 14, 2011) (internal citation omitted). While broad, the Court's "discretion is not unlimited. A district court must specify reasons for its refusal to award costs." *Mexican–American Educators*, 231 F.3d at 591 (internal quotation marks and citations omitted).

## DISCUSSION

Although Rule 54 creates a presumption that the prevailing party is entitled to costs, the Court has discretion to deny costs where: (1) the plaintiff has limited financial resources; (2) there is a great economic disparity between the parties; (3) the taxation of costs would chill civil rights litigation; (4) the case involves issues of substantial public importance; or (5) the case was close and difficult, and the plaintiff's case had some merit. *Mexican–American Educators*, 231 F.3d at 593 (noting that this is not an exhaustive list); *see also Champion Produce, Inc. v. Ruby Robinson Co., Inc.*, 342 F.3d 1016, 1022 (9th Cir. 2003) (referencing with approval factors considered by other circuits including where the losing party litigated in good faith). Here, each of these factors weighs in Plaintiff's favor, and thus, the Court exercises its discretion to deny costs.

### 1. Plaintiff's Limited Financial Resources

Plaintiff contends that he is indigent. In support of this allegation he has submitted a declaration attaching both a June 6, 2012 order of the San Francisco County Superior Court granting him leave to proceed without payment of the fees, and an application to proceed in forma pauperis in this Court dated August 31, 2013. (Dkt. No. 220.) According to Plaintiff's declaration, he has not held full-time employment since December 2010 and relies on state welfare and food stamps for his basic needs.[2] Defendants do not dispute that Plaintiff has not

---

[2] Defendants' objection that Plaintiff has provided "no information as to how he pays rents and other living expenses," is belied by the record, including Plaintiff's application to proceed in forma pauperis (which Plaintiff attested to under penalty of perjury) stating that he receives $340 a month in state welfare and $200 in food stamps. *Compare* Dkt. No. 225 at 3:12-13 *with* Dkt. No. 220-2 at 2.

3

1  been employed since 2010; rather, Defendants contend that Plaintiff received a legal
2  settlement in the amount of $35,000 in 2011 and speculate that he recovered money following
3  his acquittal of unrelated criminal charges in 2008 pursuant to California Penal Code § 4900.
4  Plaintiff responds that the $35,000 was his only income from 2011 through 2013 and states
5  that he did not recover any funds under Section 4900.  *See Washburn v. Fagan*, No. 03-
6  00869, 2008 WL 361048, at *2 (N.D. Cal. Feb. 11, 2008) (concluding that "Plaintiff's receipt
7  of [] settlement proceeds does not change the fact that Plaintiff still has very limited means.").
8  Moreover, Plaintiff's in forma pauperis application reflects an outstanding debt to the Internal
9  Revenue Service of $11,000.  Finally, given Plaintiff's mental health issues and criminal
10 history, it is indisputably challenging for him to find full-time employment going forward.
11 *See Stanley v. Univ. of S. California*, 178 F.3d 1069, 1080 (9th Cir. 1999) ("The mere fact
12 that [plaintiff] had not obtained employment at the time of the filing of the cost bill is
13 persuasive evidence of the possibility she would be rendered indigent should she be forced to
14 pay").

15 The Ninth Circuit advises that "[d]istrict courts should consider the financial resources
16 of the plaintiff and the amount of costs in civil rights cases."  *Stanley*, 178 F.3d at 1079.
17 Indeed, "[w]hether the financial resources in question are of a level sufficient to deny an
18 award of costs can be inferred from the economic circumstances of the plaintiff."  *Ayala v.
19 Pac. Mar. Ass'n*, No. 08-0119, 2011 WL 6217298, at *2 (N.D. Cal. Dec. 14, 2011)) (internal
20 citations and quotation marks omitted).  Here, Plaintiff has established that he is of
21 significantly limited financial means such that a cost award of $14,635.81 would render him
22 indigent to the extent that he is not already.  *See Rivera v. NIBCO*, 701 F. Supp. 2d 1135,
23 1143 (E.D. Cal. 2010) ("It is not necessary to find that the plaintiffs in question are currently
24 indigent; rather, the proper inquiry is whether an award of costs might make them so.").
25 Accordingly, Plaintiff's financial situation supports a denial of costs.

26 **2. The Economic Disparity Between the Parties**
27 As discussed above, Plaintiff is of extremely limited financial means.  Defendants, the
28 City and County of San Francisco, six San Francisco Sheriff's Department deputies,

4

1 Undersheriff Dempsey, and former Sheriff Michael Hennessey, while public entities and
2 public employees, are in a vastly different financial situation that Plaintiffs.  *See, e.g.,*
3 *Washburn*, 2008 WL 361048 at *2 (finding that "there exists a significant economic disparity
4 between Plaintiff and the City and County of San Francisco, the entity seeking to recover
5 costs in this action").  This factor thus likewise supports a denial of costs.

### 3.  Whether the Case Involves Issues of Significant Public Importance

Plaintiff Darrell Hunter filed this civil rights suit seeking to vindicate his rights following an incident at the San Francisco Jail whereby he alleged that six San Francisco Sheriff's deputies used excessive force against him while he was seated in a chair at the intake area. Plaintiff contended that the City and County of San Francisco should be liable for the incident because the internal affairs investigation following the incident, first by internal affairs, then upon review by former Sheriff Hennessy, ratified the unconstitutional conduct of the deputies involved in the incident. Through discovery, Plaintiff learned that internal affairs had forwarded his complaint regarding two of the deputies involved in the incident to the Sheriff for further action, and further, that the

> Sherriff Department issued a Notice of Intent to Discipline to Defendant Burleson [the first deputy who physically made contact with Plaintiff during the incident] stating that "[y]our use of force with an inmate seated in a chair and surrounded by seven or eight deputies who was not physically threatening to you was abusive and demonstrated a clear violation of the Use of Force Policy and your training as a deputy sheriff." (Dkt. No. 104-3 at p. 2.)  Former Sheriff Hennessey then presided over a Skelly hearing for Burleson and concluded that no discipline should be imposed. (Dkt. No. 104-4.)  Sheriff Hennessey was unable to recall whether he viewed the videotape of the incident prior to rendering his decision, although he testified that he did not believe he reviewed it before the hearing or during the hearing.

(Dkt. No. 126 at 6:2-10.)  Based on this evidence, the Court denied Defendants' motion for summary judgment on *Monell* liability as to the City and County of San Francisco, but bifurcated the individual liability and *Monell* liability issues for trial.  (Dkt. Nos. 126 & 162.)

At trial, the jury found for Defendants on the question of individual liability and thus did not consider the *Monell* issues.  The fact that the *Monell* issues were not presented to the jury does not alter the significance of Plaintiff's pursuit of these issues.  Indeed, that a

5

plaintiff is not ultimately successful on the merits of an issue does not mean that the issues the individual sought to redress were insignificant.  *See Darensburg v. Metro. Transp. Comm'n*, No. 05-01597, 2009 WL 2392094, at *2 (N.D. Cal. Aug. 4, 2009) ("determining the importance of the issues by looking at which party prevailed is not supported by caselaw."). Rather, it is a determination that Plaintiff did not satisfy a particular legal burden; here, demonstrating to a jury that the force used by the deputies was unreasonable by a preponderance of the evidence.  Defendants seek to undermine the significance of Plaintiffs' success on summary judgment and discovery of the workings of the internal affairs investigation here by focusing on the jury's findings, but absent Plaintiff's efforts pursuing this action the fact that former Sheriff Hennessy made disciplinary decisions without reviewing videotaped evidence of the incident in question would not have come to light.[3] Nor would evidence that less than one percent of the excessive force complaints forwarded by internal affairs to the Sheriff's Department for further review resulted in the imposition of discipline.[4]

"[A] case is considered to be of great importance when the claims involved are subject to closer scrutiny or special interest by the court, or the issues raised in the litigation have ramifications beyond the parties and concerns immediately involved in the litigation." *Ayala*, 2011 WL 6217298 at *3.  Accordingly, as this action raised important issues regarding the handling of excessive force complaints within the San Francisco Sheriff's Department, this factor also weighs against awarding costs.

---

[3] Indeed, Hennessey himself testified that he only reviews videos in the context of a Skelly hearing 60 percent of the time and that he preferred to keep "disciplinary hearings [ ] reasonably informal" because he "thought it was friendlier" and he preferred for the hearings to "go faster" because he "had a busy day."  (Dkt. No. 110-1, 27:18-21, 131:11-15.)

[4] Plaintiff presented evidence on summary judgment that of the 300 excessive force complaints filed between 2006-2010, 92 were forwarded to the Undersheriff or Sheriff by Internal Affairs ("IA") for further review, and of those, only 7 were sustained and resulted in discipline. (Dkt. Nos. 104-1 & 104-2.)"  (Dkt. No. 126 at 8:26-9:3.)

6

### 4. The Chilling Effect on Future Civil Rights Litigation

An award of nearly $15,000 in costs here would have a chilling effect on civil rights litigation. Plaintiff's claim of excessive force was significant. Further, as in *Washburn v. Fagan*, this "action raised important issues regarding how the San Francisco [Sheriff's] Department dealt with, and supervised, excessive force incidents." 2008 WL 361048, at *2. Although Plaintiff's *Monell* claims were not presented to the jury given its finding in the first phase of the bifurcated proceeding, this action presented significant issues with respect to municipal liability based on former Sheriff Hennessey's handling of excessive force complaints and the department's practices with respect to use of force generally. To award costs in this case "on losing [a] civil rights plaintiff[] of modest means may chill civil rights litigation in this area." *Stanley*, 178 F.3d at 1080; *see also Schaulis v. CTB/McGraw-Hill, Inc.*, 496 F. Supp. 666, 680 (N.D. Cal. 1980) (awarding costs "could only chill individual litigants of modest means seeking to vindicate their individual and class rights under the civil rights laws.").

The two cases cited by Defendants are inapposite. First, *Saucedo v. Dailey*, 1998 WL 709601, at *2 (D. Kan. 1998), is a case from the District of Kansas which expressly notes that the Ninth Circuit's chilling effect factor is *not* binding on that Court. Second, *Hunt v. City of Portland*, No. 08-802, 2011 WL 3555772, at *5 (D. Or. Aug. 11, 2011), is readily distinguishable as there the Court declined to set aside the cost award because the issues raised by plaintiff were "found in a significant percentage of employment lawsuits." Here, in contrast, most excessive force cases do not involve videotaped evidence of the incident in question nor testimony from the former Sheriff that he declined to impose discipline on the deputy involved in the incident, contrary to the advice of his legal counsel, without even watching the videotape.

Accordingly, the Court concludes that awarding costs in a case such as this would have chilling effect on other civil rights plaintiffs seeking to vindicate their rights.

### 5. The Closeness of the Case

Finally, the Court notes that this case was heavily disputed and vigorously litigated by both sides. Defendants did not even move for summary judgment on the excessive force claim as to the individual Defendants, and the Court denied Defendants' motion for summary judgment on *Monell* liability as to the excessive force claim. There was conflicting lay testimony presented at trial regarding the alleged excessive force incident and the parties' experts disputed what level of force would be reasonable under hypothetical situations similar to the underlying incident. The jury considered this testimony and the videotape of the alleged incident, and after two days of deliberations and multiple notes, found in favor of Defendants. This does not, however, amount to a finding that Plaintiff's case was without merit. *See Sonoma Cnty. Ass'n of Retired Employees v. Sonoma Cnty.*, No. 09-04432, 2011 WL 3957262, at *2 (N.D. Cal. Sept. 7, 2011) ("whether the plaintiff prevails on its claims is not determinative").

## CONCLUSION

Based on the foregoing, Plaintiff's Motion for Review of the Clerk's Taxation of Costs is GRANTED. The Court declines to award costs in this matter.

This Order disposes of Docket Nos. 218 & 219.

**IT IS SO ORDERED.**

Dated:  November 19, 2013

JACQUELINE SCOTT CORLEY
UNITED STATES MAGISTRATE JUDGE